UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | DOCKET NO. 3:21-CR-86 |
| | ) | |
| V. | ) | |
| | ) | RESPONSE TO DEFENDANT'S |
| ARBAB SALEEM, | ) | Motion to Dismiss Indictment |
| | ) | |
| Defendant | ) | |

The United States respectfully prays this Honorable Court to deny the defendant's motion dismiss. (Document No. 45). The defendant's motion is untimely under Rule 12(b)(3) and should be denied as such. Even if the defendant had timely filed his motion, the Second Amendment does not protect the conduct for which Arbab Saleem (the defendant) has been indicted and convicted, namely the unlawful possession of a short-barreled shotgun and a silencer, in violation of 26 U.S.C. § 5861(d). (Document No. 1).

## Background

The defendant was indicted on March 17, 2021 after law enforcement officers located a short-barreled shotgun and a silencer along with other firearms, ammunition, and firearm accessories while investigating a domestic violence incident that involved both a shooting and a stabbing. The defendant admitted guilt and entered a guilty plea to Count 1 and Count 2 of his indictment on October 22, 2021. (Document No. 19). The defendant now claims, contrary to existing precedent, that the conduct for which he has been indicted and convicted is constitutionally protected by the Second Amendment. (Document No. 45).

**Discussion**

The defendant's motion is procedurally barred under the Federal Rules of Criminal Procedure and his claim of Second Amendment protections lacks merit as to both counts of conviction.

**The defendant's motion is procedurally untimely under Federal Rule of Criminal Procedure 12(b).**

Rule 12(b) of Federal Rule of Criminal Procedure governs the timeliness of motions. Rule 12(b)(3)(B)(v) mandates that a motion challenging the failure of an indictment to state an offense "must be made before trial." Fed. R. Crim. P. 12(b)(3)(B). The Defendant has waived trial and stands before this Honorable Court having already tendered his plea of guilt. As the defendant contends that his conduct is constitutionally protected and therefore lawful, he is arguing that the indictment fails to state an offense. The defendant has failed to raise this issue in a manner required by the Federal Rules of Criminal Procedure, and the motion should be denied.[1]

**The defendant's motion fails on the merits as to COUNT 1 (Possession of a Short-Barreled Shotgun).**

The Second Amendment does not protect the possession of short-barreled shotguns. The Supreme Court of the United States clearly ruled on this issue. *See* <u>U.S. v. Miller</u>, 307 U.S. 174 (1939); *see also* <u>District of Columbia v. Heller</u>, 554 U.S. 570, 625 (2008) ("We therefore read <u>Miller</u> to say only that the Second Amendment does not protect those weapons not typically

---

[1] The defendant's challenge to the constitutionality of the National Firearms Act is not a challenge to the Court's jurisdiction that can be made at any time under Rule 12(b)(2). "Even the unconstitutionally of the statute under which the proceeding is brought does not oust a court of jurisdiction." <u>United States v. Williams</u>, 341 U.S. 58, at 66 (1951).

possessed by law-abiding citizens for lawful purposes, such as short-barreled shotguns. That accords with the historical understanding of the scope of the right.")

Despite Supreme Court holdings directly contrary to his position, the defendant suggests this Court should find that the Second Amendment protects the possession of all shotguns regardless of barrel length. (Mot. to Dismiss, Doc. 42, at 5). This Honorable Court is bound by Supreme Court precedent.

**The defendant's motion fails on the merits as to COUNT 2 (Possession of a Silencer).**

The Second Amendment does not protect the possession of silencers because silencers are not "arms." Even if considered to be an "arm" within the context of the Second Amendment, silencers would fall outside the Amendment's protections as a silencer qualifies as either dangerous or unusual or both.

Though there is no binding precedent addressing the issue of whether possession of a silencer is a right guaranteed by the Second Amendment, several Circuits and district courts have addressed the issue. All have found that that the Second Amendment does not guarantee any right to possess a silencer.[2]

Assuming silencers were protected by the Second Amendment, the National Firearms Act's (NFA) registration and taxation requirements do not unconstitutionally infringe on the

---

[2] United States v. Bolatete, 977 F.3d 1022 (11th Cir. 2020); United States v. Cox, 906 F.3d 1170 (10th Cir. 2018); United States v. Stepp-Zafft 733 F.App'x 327 (8th Cir. April 2018); United States v McCartney, 357 F.App'x 73 (9th Cir. Nov. 2009); United States v. Hasson, 2019 U.S.Dist. LEXIS 160498 (D. Md. Sept. 20, 2019), aff'd, 26 F.4th 610 (4th Cir. 2022); Kaszycki v. United States, 2020 U.S.Dist. LEXIS 95787 (W.D. Wash. June 2020); United States v. Al-Azhari, 2020 U.S.Dist. LEXIS 234268 (M.D.Fla. Dec. 2020); United States v. Grey, 2018 U.S.Dist.LEXIS 156618 (N.D.Cal. Sept 13, 2018); United States v. Perkins, 2008 U.S.Dist LEXIS 83236 (D. Neb. Sept. 23, 2008); United States v. Garnett, 2008 U.S.Dist. LEXIS 112728 (E.D. Mich. 2008).

Second Amendment's right to bear arms. However, even if the court were to find that a silencer is an "arm" that is not dangerous or unusual, within the province of the Second Amendment, and the NFA infringed on the right bestowed by that Amendment, the NFA still satisfies the standards articulated by the Supreme Court in <u>New York State Rifle & Pistol Ass'n v. Bruen</u>, 142 S. Ct. 2111 (2022).

**I.     Silencers are not "arms" in the context of the Second Amendment.**

The Second Amendment applies to "bearable arms." <u>District of Columbia v. Heller</u>, 554 U.S. 570, 582 (2008). According to the Court, "the most natural reading of [the phrase] 'keep Arms' in the Second Amendment is to 'have weapons.'" *Id.* Although that protection might extend to things necessary to use arms, such as certain magazines and ammunition, or even access to firing ranges—*see, e.g.*, <u>Fyock v. Sunnyvale</u>, 779 F.3d 991, 998 (9th Cir. 2015); <u>Ezell v. City of Chicago</u>, 651 F.3d 684, 704 (7th Cir. 2011)—it does not automatically apply to anything that can be attached to a firearm, but which is not otherwise necessary to render the firearm operable.

A firearm silencer is not necessary to make a firearm operable. Any firearm can be used without the use of silencer. "A silencer is a firearm accessory; it's not a weapon in itself (nor is it 'armour of defence')." <u>United States v. Cox</u>, 906 F.3d 1170, 1186 (10th Cir. 2018); *See e.g.* <u>United States v. Hasson</u>, No. 8:19-CR-96, 2019 WL 4573424, at *3-5 (D. Md. Sept. 20, 2019), *aff'd*, 26 F.4th 610 (4th Cir. 2022) (*"Silencers generally have no use independent of their attachment to a gun. They do not fire bullets on their own and do not contain a slide, trigger, firing pin, cartridge case, barrel, primer, or gunpowder."*)

## II. Even if considered "arms," silencers are "dangerous and unusual".

Restrictions on the possession of silencers are in line with what the Supreme Court's decision in *Heller* recognized to be the "historical tradition of prohibiting the carrying of 'dangerous and unusual weapons.'" Heller, 554 U.S. at 627. *Bruen* did not undermine *Heller's* recognition of the historical tradition of regulating "dangerous or unusual weapons"—in fact, it reemphasized it. *See* Bruen, 142 S. Ct. at 2143-44.

The historical record indicates that silencers were perceived as dangerous almost immediately after their invention, and that they were quickly used to facilitate crimes. *See* Robert J. Spitzer, *Gun Accessories and the Second Amendment: Assault Weapons, Magazines, and Silencers*, 83 L. & Contemp. Probs. 231, 246-49 (2020). The silencer was invented in the early 1900s and patented in 1908. *Id.* at 246. "Objections to civilian use of silencers appeared almost immediately." *Id.* By 1909, the first state, Maine, had banned the sale or possession of silencers, and New Jersey followed two years later. *Id.* at 247. The primary concern about unregulated possession of silencers was crime, from both typical criminals and hunters/poachers. *Id.* "From 1909 and 1936, at least fifteen states enacted silencer restrictions," including Arizona, Louisiana, Michigan, North Carolina, Pennsylvania, and Wyoming. *Id.* at 248 n.123. Ultimately, the inventor of the silencer and his company "discontinued manufacturing silencers because of the popular impression that this invention was an aid to crime." *Id.* at 248 n.125 (*Maxim Bans Gun Silencer*, N.Y. TIMES, May 8, 1930, at 27).

Assuming *arguendo* that a silencer qualifies as a weapon, it is of the "dangerous and unusual nature" which *Heller* and *Bruen* clearly rule falls beyond the protections of the Second Amendment.

### III. The registration and taxation requirements of the NFA do not infringe on the rights guaranteed by the Second Amendment.

The NFA requires registration and taxation of silencers, but does not prohibit their possession or use. As such, even if we were to treat silencers as protected by the Second Amendment, the NFA would not infringe upon the right to possess them. Justice Kavanaugh explained in his concurring opinion that nothing in *Bruen's* holding prohibited "shall issue" licensing requirements that included "fingerprinting, a background check, a mental health records check, and training in firearms handling and in laws regarding the use of force *among other possible requirements.*" Bruen, 2162 (emphasis added). The registration and taxation requirements of the NFA which are payment of a $200 tax, fingerprinting and photographing, and a background check, are no more burdensome than any of the requirements expressly approved in *Bruen*.

### IV. The NFA is readily analogous to historical regulation of commerce.

The identification of a historical analogue to the NFA is wholly unnecessary given that silencers fall well outside the protections of the Second Amendment and that the NFA's mandates do not exceed the type of mandates approved for the regulation of Second Amendment "arms." However, historical analogues to the registration and taxation scheme of the NFA are available.

"[C]olonial governments substantially controlled the firearms trade." *Teixeira v. Cnty. of Alameda*, 873 F.3d 670, 685 (9th Cir. 2017). For example, "a 1652 New York law outlawed illegal trading of guns, gun powder, and lead by private individuals." Robert J. Spitzer, *Gun Law History in the United States and Second Amendment Rights*, 80 Law & Contemp. Probs. 55, 76 (2017).[2] "A 1631 Virginia law required the recording not only of all new arrivals to the colony, but also 'of arms and munitions.'" *Id.* In the early 17th

century, Connecticut banned residents from selling firearms outside the colony. *Teixeira*, 873 F.3d at 685. Virginia provided that people were at "liberty to sell arms and ammunition to any of his majesties loyal subjects *inhabiting this colony*." *Id.* at 685 n.18 (emphasis added). And other colonial governments "controlled the conditions of trade" in firearms. *Id.* at 685.

States continued to enact laws governing "the manufacture, sale, [and] transport" of guns and ammunition in the 18th and 19th centuries. *Id.* at 74. For example, in 1814, "Massachusetts required that all musket and pistol barrels manufactured in the state be first tested," and it appointed a state inspector "to oversee or conduct the testing." *Id.* Likewise, in 1820, "New Hampshire created and appointed state gunpowder inspectors to examine every storage and manufacturing site." *Id.* Meanwhile, "[t]wentieth century laws extended safety regulations pertaining to gunpowder and other explosives." *Id.*

Although the statutes are not identical to the above historical statutes, *Bruen* explained that the government need only identify a "historical *analogue*, not a historical *twin*." 142 S. Ct. at 2133. In this case, the practice of the colonies and the United States of regulating commerce in firearms provides a sufficient historical analog.

BASED ON THE FOREGOING, the United States respectfully prays this Honorable Court to DENY the defendant's Motion to Dismiss.

DENA J KING
UNITED STATES ATTORNEY

*/s/ Timothy Sielaff*
ASSISTANT UNITED STATES ATTORNEY
North Carolina State Bar No. 33648
227 West Trade Street, Suite 1650
Charlotte, North Carolina 28202

Telephone: (704) 227-0184
Email: timothy.sielaff@usdoj.gov